*If this opinion indicates that it is "FOR PUBLICATION," it is subject to revision until final publication in the Michigan Appeals Reports.*

# STATE OF MICHIGAN

# COURT OF APPEALS

*In re* A. E. SIMPSON, Minor.

UNPUBLISHED
March 14, 2024

No. 368139
Berrien Circuit Court
Family Division
LC No. 2023-000004-NA

Before: SWARTZLE, P.J., and REDFORD and YATES, JJ.

PER CURIAM.

Respondent-father appeals by right the trial court's order terminating his parental rights to the minor child, under MCL 712A.19b(3)(b)(*i*) (child or a sibling of a child has suffered physical injury or physical or sexual abuse) and MCL 712A.19b(3)(j) (reasonable likelihood of future harm to the child if the child is returned to the parent's care). We affirm.

## I. BASIC FACTS

The Michigan Department of Health and Human Services (DHHS) petitioned to terminate respondent's parental rights to the minor child, his son, because of sexual abuse against the child's half sister. The sister alleged that respondent touched her buttocks and vaginal area. This abuse happened on at least three occasions. There is no evidence that respondent touched his son in such a manner. The county prosecutor charged respondent with second-degree criminal sexual conduct (CSC-II) for his alleged abuse of the minor child's sister.

The offense at issue is not respondent's first offense pertaining to young children. Seventeen years earlier, respondent was convicted and sentenced to federal prison for offenses relating to graphic child pornography. His sentence required him to register as a sex offender. Respondent's sentence arose from the discovery of pornography featuring children and toddlers on his device. Respondent violated his federal probation on four occasions, most recently in 2020 when an unnamed foreign government contacted the FBI, stating that someone from respondent's address and from respondent's mother's IP address viewed child pornography.

After a termination hearing, the trial court concluded that petitioner presented clear and convincing evidence that the alleged statutory grounds were met and that a preponderance of the evidence established that termination served the child's best interests. Respondent now appeals.

## II.  STANDARD OF REVIEW

We review for clear error a trial court's determinations that at least one statutory ground for termination was proven by clear and convincing evidence and that termination was in a child's best interests.  *In re Olive/Metts*, 297 Mich App 35, 40; 823 NW2d 144 (2012).  "A finding of fact is clearly erroneous if the reviewing court has a definite and firm conviction that a mistake has been committed, giving due regard to the trial court's special opportunity to observe the witnesses."  *In re Moss*, 301 Mich App 76, 80; 836 NW2d 182 (2013) (quotation marks and citation omitted).  Under the clearly erroneous standard, a trial court's decision must be "more than just maybe or probably wrong."  *In re Williams*, 286 Mich App 253, 271; 779 NW2d 286 (2009).  "When applying the clear-error standard in parental termination cases, regard is to be given to the special opportunity of the trial court to judge the credibility of the witnesses who appeared before it."  *In re Mota*, 334 Mich App 300, 320; 964 NW2d 881 (2020) (quotation marks and citation omitted).  "Any related statutory interpretation poses a question of law reviewed de novo, as does the question whether the trial court conformed to the applicable procedural rules."  *In re Medina*, 317 Mich App 219, 227; 894 NW2d 653 (2016) (citations omitted).

## III.  ANALYSIS

### A.  STATUTORY GROUNDS

Although respondent does not clearly address the question of statutory grounds for termination, we will briefly address the matter for the sake of completeness.

The petitioner must establish at least one statutory ground for termination.  *In re Olive/Metts*, 297 Mich App at 37, 41.  To terminate parental rights, "the trial court must find by clear and convincing evidence that at least one of the statutory grounds for termination in MCL 712A.19b(3) has been met."  *In re VanDalen*, 293 Mich App 120, 139; 809 NW2d 412 (2011).

#### 1.  MCL 712A.19b(3)(b)(*i*)

The trial court terminated respondent's parental rights under MCL 712A.19b(3)(b)(*i*) and MCL 712A.19b(3)(j), which provide:

> (3)  The court may terminate a parent's parental rights to a child if the court finds, by clear and convincing evidence, 1 or more of the following:
>
> * * *
>
> (b)  The child or a sibling of the child has suffered physical injury or physical or sexual abuse under 1 or more of the following circumstances:
>
> (*i*)  The parent's act caused the physical injury or physical or sexual abuse and the court finds that there is a reasonable likelihood that the child will suffer from injury or abuse in the foreseeable future if placed in the parent's home.

-2-

(j) There is a reasonable likelihood, based on the conduct or capacity of the child's parent, that the child will be harmed if the child is returned to the home of the parent.

In *In re Mota*, 334 Mich App at 303, 321, 322, the trial court terminated the respondent's parental rights to his three minor children because of domestic violence in the home and a single act of sexual abuse of one of the children. The DHHS reported that the abused child had informed his maternal grandmother that the respondent had entered the child's bedroom, pulled down the child's pants and underwear, touched the child's buttocks, and used a flashlight or phone light, presumably to take pictures of the child. *Id*. at 304, 305. The child repeated an identical version of the alleged abuse to a DHHS employee during a forensic interview. *Id*. at 305. A nurse examined the child and found injuries consistent with the alleged abuse. *Id*. at 306, 307. On appeal, this Court ruled that, although there had only been one act of sexual abuse against the child, it was "especially egregious" because the child considered the respondent a "father figure." *Id*. at 322. This Court also ruled that, under the doctrine of "anticipatory neglect," record evidence did not support the respondent's claim that he did not pose a danger to the other children. *Id*. at 323. Therefore, this Court concluded that the trial court did not clearly err by terminating the respondent's parental rights to the children. *Id*.

The doctrine of anticipatory neglect recognizes that "how a parent treats one child is certainly probative of how that parent may treat other children." *In re AH*, 245 Mich App 77, 84; 627 NW2d 33 (2001) (quotation marks, alteration, and citations omitted). The doctrine "inherently acknowledges that no actual detrimental act has occurred." *In re Christie*, 339 Mich App 1, 6; 981 NW2d 172 (2021). The doctrine, however, does not apply where the neglected or abused child and the other children differ significantly in ages or needs. See *In re LaFrance*, 306 Mich App 713; 858 NW2d 143 (2014); *In re Kellogg*, 331 Mich App 249, 259; 952 NW2d 544 (2020) (holding that the probative value of the anticipatory neglect doctrine was diminished by significant differences between the children, such as age and medical conditions).

In this case, an anticipatory neglect inference is not clearly unwarranted. No evidence established that respondent abused the child at issue, his son. The trial court, however, found that clear and convincing evidence established that respondent sexually abused the child's half sister. The trial court found the testimony of the forensic interviewing specialist from the Child Advocacy Center especially compelling. The specialist testified that the sister's statements supported an allegation of sexual contact by respondent because the sister's statements indicated multiple incidents of being touched in her private area. In the specialist's opinion, the circumstances described by the sister could not have indicated anything other than illicit sexual touching.

The abuse in this case involved at least three occurrences of sexual abuse by respondent involving his touching of the subject child's sister's private parts. Such conduct was as egregious as the illicit touching of a child's buttocks and the potential photographing that occurred in *In re Mota*. Unlike in *In re LaFrance*, 306 Mich App at 715, 730, 731, which rested on the neglect of one child who had unusual health issues relative to the older children, the evidence established that

respondent committed sexual abuse of the sister who is only two years younger than the child for whom respondent's parental rights were terminated. The evidence in this case clearly supported the trial court's conclusion that the doctrine of anticipatory neglect applies to this case. The evidence established that respondent posed and would continue to pose a danger to young children, including his son. Therefore, the trial court did not clearly err when it found by clear and convincing evidence that a continued relationship with respondent likely posed a risk of foreseeable harm to the child.

### 2. MCL 712A.19b(3)(j)

The trial court also found that clear and convincing evidence established that a reasonable likelihood existed that harm would come to the child if returned to respondent's care. MCL 712A.19b(3)(j). In *In re Olive/Metts*, 297 Mich App at 41, the respondent struggled with anger management for years. Although she received professional treatment for her problem and engaged in anger-management classes, she failed to control her anger. *Id*. She "flew into a rage" during a family visit and was eventually arrested for disturbing the peace. *Id*. Evidence presented at the trial showed that some of the children were "mimicking respondent's behavior." *Id*. Therefore, this Court concluded that the trial court rightly found that the children were reasonably likely to be harmed if they were returned to the respondent's home. *Id*. Trial courts may also consider compliance (or noncompliance) with parental treatment plans, and where a parent has not complied with such a treatment plan, the court can terminate such parent's rights. See *In re Frey*, 297 Mich App 242, 248; 824 NW2d 569 (2012).

In this case, the trial court considered respondent's troubled background and history of noncompliance with the requirements of his supervised release. Respondent is a registered sex offender. Further, respondent violated his federal probation on four occasions, most recently in 2020. Given that the sister was just six years old when the alleged abuse occurred and that she was eight years old during the trial, the abuse occurred just one year after respondent's latest federal supervised release violation, which also involved child pornography. All this evidence confirmed the opinion of a DHHS employee that, although respondent had engaged in all the services that the federal government could have provided him, nothing had changed regarding his troubling appetite for child pornography. Moreover, the circumstances of respondent's latest supervised release violation strongly suggest that his deviant sexual proclivities remained at the time that he allegedly abused the sister.

In *In re White*, 303 Mich App 701, 711; 846 NW2d 61 (2014), this Court stated, "[A] parent's failure to comply with the terms and conditions of his or her service plan is evidence that the child will be harmed if returned to the parent's home." Similarly, in *In re Frey*, 297 Mich App at 248, this Court stated that, given the respondents' failure to successfully complete the services and mandatory treatment plan requirements, "the trial court did not clearly err by finding insufficient compliance with and benefit from the services provided by the DHS, necessitating the termination of respondents' parental rights." Although respondent completed the required federal services and parenting and emotional-stability counseling, like the respondent in *In re Olive/Metts*, 297 Mich App at 41, respondent persisted in his troubling sexual tendencies and violated supervised release on four occasions. In other words, respondent complied with the terms, but not the underlying purpose, of the federal services and parental counseling.

-4-

Evidence also indicated that there is reason to fear that the child, like the children in *In Olive/Metts*, may follow in his father's footsteps. See *id*. The child's mother testified that she once caught the child looking up pornographic websites. Evidence indicated that someone viewed child pornography from respondent's mother's IP address. The child's sudden interest in pornography was one of the primary reasons why his mother wanted to cut her son's contact with respondent. Under the circumstances presented in this case, the trial court did not clearly err when it found by clear and convincing evidence that the child will likely suffer harm if he returns to respondent's care. See *id*.

## B. BEST INTERESTS

"If the court finds that there are grounds for termination of parental rights and that termination of parental rights is in the child's best interests, the court shall order termination of parental rights and order that additional efforts for reunification of the child with the parent not be made." MCL 712A.19b(5). The petitioner bears the burden of proving that termination is in the child's best interests by a preponderance of the evidence. *In re Moss*, 301 Mich App at 90. In making a best-interest determination, the court's focus should be the child, not the parent. *In re Schadler*, 315 Mich App 406, 411; 890 NW2d 676 (2016).

When deciding whether termination serves the child's best interests, a court may consider (1) the child-parent bond; (2) the parent's parenting capabilities; (3) the child's need for permanency, stability, and finality; and (4) advantages presented by a foster home relative to the parent's home. *In re Olive/Metts*, 297 Mich App at 42. The child's placement with relatives is an additional, "explicit" factor for trial courts to consider in determining whether termination of a party's parental rights serves the child's best interests. *In re Mason*, 486 Mich 142, 164; 782 NW2d 747 (2010). Placement with relatives weighs against a termination of parental rights. *Id*. Failure to consider this factor renders a best-interest determination inadequate. *In re Mays*, 490 Mich 993, 994; 807 NW2d 307 (2012). Moreover, the "trial court has a duty to decide the best interests of each child individually." *In re Olive/Metts*, 297 Mich App at 42.

In this case, the trial court focused on the child's placement with his biological mother and his bond with respondent. The trial court also considered respondent's parenting abilities a relevant factor in this case. The trial court found that the mother provided the child a safe, nurturing environment. Although placement with relatives weighs against a trial court's termination of parental rights, *In re Mason*, 486 Mich at 164, this factor is not dispositive of whether the trial court clearly erred in its decision. See *In re Atchley*, 341 Mich App 332, 347; 990 NW2d 685 (2022). Ironically, the child's placement in a relatively secure environment with his mother supports the trial court's conclusion that termination served the child's best interests, particularly regarding the other two factors: the child's bond with respondent and respondent's parenting skills.

Respondent argues on appeal that he and his son enjoyed a strong and close child-parent bond. Even so, this Court has warned that, "in an imperfect world," the value that a child derives from his or her relationship with a parent is not "universally positive." *In re Medina*, 317 Mich App at 240. If this were the case, "there would be little need for child protective proceedings." *Id*. Consequently, if the record "is clear that 'value' for the child in this instance lies in severing all ties with respondent and beginning life anew," then it must be so. *Id*.

The record is somewhat inconclusive regarding the strength of the child's bond with respondent. The child's paternal grandmother maintained that the child and respondent enjoyed a very close father-son relationship. She saw them participate in many fun activities together, and she stated that the child was concerned about respondent's well-being. By contrast, the child's mother testified that the child no longer wanted to be near respondent and that he was somewhat aware of the CSC charges pending against respondent. The trial court found the testimonies of both the mother and grandmother extremely valuable. However, these testimonies were not necessarily in conflict. The grandmother's testimony described the child's previous bond with respondent, while the mother described the status of the child's present bond with respondent. Accepting the testimony of both witnesses as true, it indicates that respondent's once strong bond with his child has waned. See *In re Atchley*, 341 Mich App at 347. The child now appears generally apathetic to respondent's well-being and does not want any further contact with his father. See *id*. The evidence established that the child's present bond with respondent at best is weak.

As for respondent's parenting skills, the grandmother insisted that, although respondent could be strict, he was a good father who cared about his son's upbringing. Even the mother admitted that, although she did not consider respondent a great parent, she was happy that he wanted to be more involved in his son's life. Although no evidence at trial indicated that respondent inappropriately touched the child, the mother testified that respondent had verbally abused the child and that the child consequently struggled with anger management.

Petitioner presented evidence that respondent has not altered his sexual proclivities toward young children. Although the latest supervised release violation occurred over three years ago, the more recent allegations of sexual abuse against the sister cast doubt on respondent's ability to reform. Further, the child's sudden interest in pornography, although not directly traceable to respondent, casts further doubt on respondent's ability to effectively parent a child or to reform his ways. This Court has indicated that a respondent's failure to address his own issues, such as alcoholism and mental problems, casts doubt on the respondent's ability to effectively care for a child. See *In re Rippy*, 330 Mich App 350, 361-362; 948 NW2d 131 (2019). An addiction to child pornography and sexual attraction to young children raise legitimate concerns about a respondent's parenting skills.

Respondent has also argued that the child will suffer if he loses contact with his grandmother. The grandmother stated that she enjoyed a strong personal bond with her grandson. Even if this is so, there is no clear indication from the record that the grandmother would not be able to visit the child because of respondent's loss of his parental rights to the child. Regardless, this Court has clearly stated that "grandparents do not have a fundamental right to maintain a family relationship with their grandchildren . . . ." *Brinkley v Brinkley*, 277 Mich App 23, 35; 742 NW2d 629 (2007). It is the child's best interests, not the grandmother's, that must take priority. See *In re Moss*, 301 Mich App at 88.

The record reflects that a preponderance of the evidence supports the trial court's determination. Therefore, the trial court did not clearly err by finding that termination of respondent's parental rights to his son served the child's best interests.

Affirmed.

/s/ Brock A. Swartzle
/s/ James Robert Redford
/s/ Christopher P. Yates